The next case on our call this morning is agenda number four, case number 105751, People of the State of Illinois v. Maurice Artis. May it please the court, I am Jonathan Silberman with the Illinois Attorney General's Office and I represent the people on this appeal. This court should abrogate the One Act, One Crime doctrine for the following four reasons. First, the doctrine was adopted so as not to adversely affect parole, but parole has long since been eliminated. Second, the doctrine can interfere with a sentencing court's discretion and power. Third, the doctrine produces confusing results and is not amenable to consistent application. Fourth, the doctrine consumes resources that are better spent elsewhere in Illinois' criminal justice system. In the alternative, if the One Act, One Crime doctrine is not eliminated, then when a defendant is convicted of more than one same-class crime, the people should be permitted to exercise their prosecutorial discretion to choose the surviving conviction. Through the years, other reasons besides an adverse effect on parole have been advanced to justify this doctrine. They include that the One Act, One Crime doctrine is required by the United States and Illinois constitutions, that multiple convictions will affect bond, that multiple convictions will factor into recidivist statutes or extend a sentence or allow for more impeachment at a future trial. I will turn to those reasons now. There should be no doubt that the One Act, One Crime doctrine is not constitutionally mandated. This court in People v. Henry, People v. Gray, and People v. King made this very clear. Instead, double jeopardy, and more specifically the Blockberger test, that's the same element test, provides the constitutional rule. Counsel, didn't you concede below that counsel had issued value to the One Act, One Crime? Your Honor, the concession was that they were based, that the two aggravated criminal sexual assaults were based on one act. But in response, as appellant here, we can put forth any argument that will support the judgment. And, in fact, the trial court entered sentence on all counts. And at the critical time, that is when sentence was imposed, all parties requested imposition of sentence. So I would say that in that event, we should not be barred from procedural default for raising this argument. In addition, the petition for leave to appeal did assert the claim. You conceded at trial, and now you wish the rule to be abolished. We conceded at trial that there was one act. But the judgment imposed conviction on all counts. And what we're arguing now is that the judgment, that doing away with the One Act, One Crime doctrine would mean judgment would be imposed on all of those crimes. Counsel, I think that, in my research, that this court last looked at this issue at the state's request in 96 in Rodriguez. Yes, that's my research, too. So my question would be, what's changed since 96 that would make us want to reexamine the principle that we'd say is pretty well set under stare decisis? Your Honor, over time, let me start this way. Over time, this court has employed the One Act, and lower courts in response have employed the One Act, One Crime doctrine. The General Assembly has responded over the course of time with operated independently, in a sense. They've required consecutive sentences, for example, in certain instances. So it has become increasingly, there's an increasing dissonance between what a sentencing court should do, what the One Act, One Crime doctrine says the sentencing court should do, rather, and what the sentencing statutes require. But I would also suggest that, viewing the other justifications that have developed over time, and I would turn to that now, demonstrate that the justifications that have been put forth in different cases really should not persuade. I hope I answered the question. I think the development of the law is such that it has become increasingly difficult to comply with the One Act, One Doctrine, or increasingly complex, I should say. And I think that the myriad of cases where there have been difficulties in attempting to comply with the doctrine, demonstrate that over time, this has become a much more difficult task to perform. And how would we assess that? That it's more difficult to... Well, every year there are many, many cases that arise in the courts. And I've listed just out of the last year or so, 16, and there are many, many more all the time. So, I mean, I think this court can certainly take judicial notice of these number of cases, some of which have to be reversed in the appellate court or in this court. So I think that that's one indication of the difficulty of compliance, in addition to the justifications for it. I mean, the other thing that I would say is that the One Act, One Doctrine is a policy-driven doctrine. It's a judgmental doctrine. So that if over time, the policy would indicate that it is more difficult to comply with, then it would justify changing that doctrine. Counsel, if we could talk for just a moment about discretion. Yes. It's a simple question. You have that discretion any time before the sentence was imposed, didn't you? Yes. And you could exercise it, and if you were concerned about the ramifications of what cases dismissed would do you the least harm, you could have accomplished your purpose before sentencing. Yes. Okay. Thank you. Yes. Bob. I knew there would be more. My response to the question is that this discretion should proceed during the prosecution. And I believe it's 2-16 that defines prosecution. Wouldn't some be tempted to say that what you really want to do is to wait and see how the sentence goes, to see if it's the best you could get or not? Your Honor, I think the sentencing judge, one could say that, but I think more accurately the sentencing judge imposed a sentence, in this case, of 35 years. It was not the people who chose that sentence. So I think there's a little more complexity than simply saying, well, we just wanted to wait and see. The suggestion that we have the discretion really only supports the sentencing court's discretion in sentence. After all, this sentence, there's nothing improper about this sentence. Mr. Silverman, could you, I know we're moving a little bit forward here, but your argument that the crimes are of equal severity. Yes. Could you address the fact that home invasion and residential burglary, the different culpable mental states, the home invasion being what, class X and residential burglary, class I, the culpable mental states of the two versus your argument that they're equal severity? Yes. I interpret that as a couple of questions. First, aggravated criminal sexual assault is of equal severity, defined by the General Assembly as each is a class X crime. Regarding the mental state, and I think that that is some confusion that has arisen over time, for example. Illinois defines the mental states as intent, knowledge, recklessness, and negligence. The mental state for home invasion and for residential burglary is intentional conduct. The mental state is intent. And I think the confusion arises because when the comparison is not truly regarding mental states, the comparison there would be murder, intent, knowledge, or recklessness. But the comparison truly is in harms, in the act that causes the harm. And so that's where I think the confusion is. You deviated a little bit from mental state and went to the fact that home invasion is a class X and residential burglary is a class I. Is the home invasion, the aggravated criminal sexual assault, the home invasion conviction, therefore a more serious crime just based on that fact alone, that home invasion in and of itself is a class X versus residential burglary, a class I? That goes to one of the nubs of a dispute, Your Honor. And my response is that the General Assembly has defined the crime as aggravated criminal sexual assault. And the General Assembly has designated that crime as a class X crime. Its punishment, there is no doubt that home invasion is classified as more serious than residential burglary. But the crime is not home invasion and residential burglary. Those are elements of the crime as defined by the General Assembly, that is, aggravated criminal sexual assault. I hope, did that answer the question? It did. I'm sure Mr. Brown takes a contrary view of that and we'll hear more of that. I'm sure. Now, continuing on the question of discretion, there is no dispute that when there are same-class crimes, at least between the parties, there is no dispute that when there are convictions on same-class crimes and there is no way to tell the difference in terms of severity that the people do have the discretion to choose. On page 12 of the defendant's brief, he has conceded that that is so. And this Court should accept that concession for two reasons. First, the exercise of prosecutorial discretion in this context is a corollary of the prosecutor's discretion to nully a case. And second, it is a corollary of the people's discretion to frame the number of issues regarding one act, one crime, and it is not unfair. What should have happened here then? Should the appellate court have done what they did or not done what they did and have some fact finder somewhere permit the State to go before and make their discretionary pick? How would it have played out? Your Honor, in the appellate court, the State made the same argument, requested that the appellate court affirm the aggravated criminal sexual assault based on residential burglary and the whole invasion conviction. The appellate court heard that argument, considered it, and then ruled otherwise. So it wouldn't have to be... Would they have had the authority to give you that option at that point in the proceedings? Yes. Because they can... Yes. It's their authority. Is there any example of where anything like that has been done in the past? Well, there have been various cases in our brief, but I'll just list the names. McCollar, Unrebuttal, I guess I can. But they're discussed in our brief where the appellate court has allowed the designation of those surviving crimes. Eubanks is one. McCollar is another. Unrebuttal, I'll just check with the other names. So that's happened in about three or four appellate court cases. Alternatively, I suppose, although I wouldn't think it's necessary because I think sufficient power is given to the appellate court to affirm or reverse convictions, but I would think that it is... The other alternative would be to remand back, but I don't think that that would be necessary in this case. So as Your Honor suggested, the nub of the dispute on the discretion question is whether one of the aggravated criminal sexual assaults is more serious than the other. And as I've already set forth, our position is that it is not. They are of equal severity. The General Assembly has said it's so. And this Court should not look to the aggravating circumstance because the crime that the General Assembly is punishing is not that crime, but a compound crime of which the aggravating circumstance is an element. So on your alternative argument, you're not asking us to overrule People v. Lee? No, Your Honor. So you're not saying that in every instance the State ought to decide which count survives, but you're just saying if they are equal that the law presently provides that you should decide? Your Honor, this case involves the latter issue, and I would say that it has the discretion. Now, if this Court agrees, prosecutorial discretion does take it in the trial court. It's easier there. The prosecutor can elect to proceed with the lesser or greater offense. But in terms of on an appellate level, that's another case. The other point that I would make regarding Lee is that the prosecutorial discretion was not raised or argued in Lee, and I remember that that's so. But, well, I guess that's the answer. Lee just does not speak to discretion in this case as far as we contend. But I think there's language in Lee that says we've always held that the least serious or the less serious offense should be vacated in favor of the more serious. Yes, Your Honor, that's true. But you're saying this isn't that case. This isn't that case. Two things. This isn't that case, and Lee spoke about where there was no exercise of discretion. So there are two distinctions that I would draw. Two distinctions that I would draw. Your Honor, for these reasons, I would ask that this Court reconsider the One Act, One Crime doctrine and abrogate it alternatively, grant the people the or recognize the discretion that the people have to choose a surviving conviction when they are of same class classifications. Thank you. Thank you, sir. Mr. Brown, you may proceed. May it please the Court. Mr. Silverman. Good morning, Your Honors. My name is Kenneth Brown, and I represent the defendant in this case, Maurice Artis. Your Honors, we're asking this Court in this case to affirm the decision of the Third District Appellate Court. That court applied well-settled One Act, One Crime principles in reaching its decision in this case. Now, in the Appellate Court, the State did agree that One Act, One Crime principles applied in this case and that, therefore, one of the defendant's convictions for aggravated criminal sexual assault had to be vacated. Now, for the first time on appeal before this Court, the State is asking this Court to abandon the One Act, One Crime rule. So we've argued that it's waived, but beyond that, I'd like to just take a few moments to address that issue before I get to the substance or the merits of the Appellate Court's decision. We, of course, would ask this Court to reject the State's request to abandon the One Act, One Crime rule. The rule is well-settled precedent. The rationale for the rule is that a defendant is prejudiced when he has more than one conviction that is carved from the same physical act. The rule goes back more than 30 years to 1977 when this Court decided the King case, and it's really rooted in the Schlinger case, which goes back 50 years. Now, the State says that the reasons for the rule no longer apply because discretionary parole was eliminated in 1978, a year after King was decided, and therefore multiple convictions for the same act no longer can adversely affect a defendant's parole opportunities. But since 1978, since MSR came in, this Court has repeatedly validated the One Act, One Crime rule. In 1995, in fact, it extended the rule to juvenile cases in In Re, W.C., and that was a unanimous decision by this Court authored by Justice Freeman. And then in 1966 in Rodriguez, the Court expressly rejected the State's request to abandon the rule, and it clarified the two-part test for the One Act, One Crime rule. And then as recently as 2004 in the Harvey case, this Court held that the One Act, One Crime rule violates, is plain error because it affects the substantial rights of a defendant, and that was a decision authored by Justice Kilbride. And in addition, since 1978, after parole was abolished, this Court has recognized other reasons for the existence of the One Act, One Crime rule. In the Davis case in 1993, I believe it was, this Court said that multiple convictions for one act can prejudice a defendant in a future case as far as the setting of bond and in a court's sentencing decisions. And in Davis, this Court mentioned that the multiple convictions based on one act can show up in a pre-sentence investigation, and of course a trial judge then sentencing the defendant in the subsequent case will look at that pre-sentence investigation, see these numerous convictions, and can readily include and properly conclude that a greater sentence should be imposed against the defendant because he has a serious criminal record. And then in W.C., which was decided in 1995, the juvenile case, this Court did extend the rule to apply to juvenile adjudications because it found that multiple juvenile adjudications based on the same act can be used to aggravate a future adult sentence. So I think this Court has given several additional reasons for the existence of the rule since discretionary parole was eliminated, and I think this Court was right in its conclusions in Davis and in W.C. that there are these prejudicial aspects of multiple convictions for the same act because there are serious sentencing consequences where a defendant has two convictions based on the same act. Mr. Brown, why isn't Mr. Silverman's argument legitimate, namely that both aggravated criminal sexual assault convictions were Class X felonies regardless of the underlying home invasion or residential burglary, and therefore that the state should have the discretion to choose which conviction survives? Well, our position on that question, Justice Thomas, is that a court can look at the aggravating factors for the offense of aggravated criminal sexual assault in making a determination of which offense is more serious and which offense is less serious under one act, one crime principles. And that's what the Court did here, and I think that this Court approved the approach of looking at the aggravating factors in a sexual assault offense in the Rodriguez case. If I could just talk briefly about the Rodriguez case. In Rodriguez, the defendant was charged with multiple counts of aggravated criminal sexual assault. Four of the counts were based on home invasion, and four of the counts were based on displaying a dangerous weapon. The defendant in that case was also charged with a separate count of home invasion. And in that case, the jury returned with a general verdict finding the defendant guilty of aggravated criminal sexual assault and a separate verdict finding him guilty of home invasion.  In a one act, one crime analysis, this Court said that it assumed that the conviction for aggravated criminal sexual assault, the general verdict was based on the more serious offense of displaying a dangerous weapon. It therefore held that the separate home invasion could stand because it was not a lesser included offense of aggravated criminal sexual assault based on displaying a dangerous weapon. So in that case, this Court looked at the aggravating factor to determine which offense of aggravated criminal sexual assault was more serious. And that's what the courts in Daniels, a case relied on by us in the appellate court and by the appellate court in this decision, did. They looked at the aggravating factors and compared them, and that's what the appellate court did in this case. They compared the aggravating factor of home invasion to the aggravating factor of residential burglary and determined that home invasion was the greater offense because it had a greater legislative classification and a greater mental state. And that's regardless of the fact that they carry the same penalty as Class X. Yeah, I mean, we can't dispute that. They both are Class X offenses with the same sentencing range. But it's our position that it was proper for the appellate court under Rodriguez and a couple of appellate court cases to look at the aggravating factor to determine which was the more serious offense. You would agree apparently, and you mentioned in your brief, that the state should have the prosecutorial discretion if we disagree with your analysis of which is the more serious offense and you can't tell whether, is that correct? I would agree that, yes. I have a question based upon that. The parties are really in positions that are different than in most cases. Normally the state is asking for the conviction to stand on the most serious offense, which you say is aggravated criminal sexual assault based on home invasion, and you would be advocating for the less serious. I mean, normally that's what happens. Is there a rationale on which of the convictions should stand that the one that allows for the greatest sentence is the one that should be allowed to stand? That is, is that the basis for letting the more serious stand normally? I think that it is. I think this court can look at the legislative classification in terms of the class of the offense and then also what the sentencing range is. And so then in this case, should we look at what happens, what the consequences are of allowing the aggravating factor, the conviction to be on home invasion because that by necessity eliminates the conviction for home invasion, which reduces the total amount of the sentence? Well, I don't think that that is the case. I think that this court has always held that the more serious offense in a one-act crime situation has to be retained and the less serious offense be vacated. But we don't have the difference in sentencing on the aggravated criminal sexual assault, no matter which is the aggravating factor. So is it legitimate for this court to look at the overall sentencing scheme in this case? I don't think so because what the court is looking at is comparing the two aggravated criminal sexual assault offenses. And, you know, the state argues that there is some kind of a windfall here because the home invasion, you know, the defendant got on the separate home invasion 15 years and the separate residential burglary 12 years. But, you know, we don't see that as a windfall. We see it as a one-act, one-crime violation in a conviction and a sentence on an unauthorized conviction. And our position would be that this court in Lee rejected any windfall claim on the part of the state where it vacated the less serious offense of second-degree murder, which happened to have the greater sentence of 20 years compared to the aggravated battery with a firearm conviction the defendant got in that case for 20 years. I would like to just briefly address the state's alternative claim that both of the aggravated criminal sexual assault convictions can stand because they did raise that issue in their brief. But as we pointed out in our brief, beyond waiver, the state should be stopped from raising this claim because it never made the argument below. It always conceded that both counts were based on the same act of sexual penetration. It did that at the plea hearing, at the sentencing, in its appellate court brief, and in its position for leave to appeal. So they've taken inconsistent positions all along. And even if this court reached the merits of that issue, I think it's clear that it has no merit and it should be rejected. This court has consistently held in cases such as Segarra and Garcia that a defendant can only stand convicted of one count of aggravated criminal sexual assault based on a single act of penetration. And if this court adopted the state's position on this point, it would mean that it would have to reject cases such as Segarra and Garcia and a host of other appellate court cases. The fact of the matter is that it doesn't make any difference what the aggravating factor is. They're still based on the same act of sexual penetration. So for all these reasons, Your Honors, we would ask this court to affirm the decision of the Third District Appellate Court. And I'd be glad to ask or answer any other questions if there are any. Thank you, Mr. Brown. Thank you, Judge. Mr. Silberman. Thank you, Your Honor. On pages 31 and 32 of our brief, we list the cases where the appellate court has recognized the discretion given to the prosecution to choose the surviving conviction on appeal. Did it indicate how that ñ I mean, I can understand it as an intellectual pronouncement, but how did they accomplish that? I believe they, as this appellate court did, they affirmed one conviction and vacated the other conviction. As a mechanical matter, I believe that the ñ How did the State transmit their ñ Oh, in the appellate briefs. In the briefs. In the briefs. I'm sorry, I misunderstood. Yeah, no, it was in the appellate briefs as it would be communicated here. I don't ñ if Your Honor ñ That's fine. Secondly, Justice Carmeier, I'd like to follow up with your question. Since these ñ it is our position that since these crimes are the same class crimes, that this court could look to the sentence actually imposed. The distinction between that situation and Lee is that in Lee, the crimes were different classifications, albeit there were overlap sentence. But here, the classification is the same, and it would be appropriate to uphold the sentencing court's discretion in that regard. So a rule such as that would not violate Lee. And we're ñ back to Justice Carmeier's question. We're dealing with a difference of three years? Yes, Your Honor. Because under the present makeup, the residential burglary stands under the appellate court decision at 12 years, and the home invasion was vacated at 15, right? Yes. Okay. Yes. Yes. Okay. Regarding some of the justifications for the one act, one crime doctrine, I'll go very, very, very quickly. In terms of bail, past conduct can be taken into consideration. That's much broader than convictions. Regarding recidivist statutes and convictions resulting from or connected to the same transactions count as one, so there's no prejudice for multiple convictions. As to eligibility for Class X sentencing, again, prior convictions must be separately brought and tried and arise out of a different series of acts. And, of course, in each of those circumstances, the crimes must be committed at separate times. As to the defendant's contention that the same act could be used to enhance a charge, an extended defendant's sentence, the conviction that serves as the predicate for an extended sentence must be separately brought and tried and arise out of a different series of acts. So as to each of those, prejudice will not arise to a defendant. And, finally, as to future impeachment, people v. Montgomery and its progeny provide protection for the defendant. So for these, unless there are other questions for these reasons, we ask that the judgment of the appellate court be reversed. Thank you. Thank you, counsel. Thank you both. Case Number 105751 is taken under advisement as Agenda Number 4.